McKinney, J.,
delivered the opinion of the court.
This was an action ^>f trover, brought in the cireuit court of Madison, to recover the value of a female slave named Sylvia, claimed by Eerguson and wife, which the defendant, on demand being made, refused to surrender to them. Judgment was for the defendant, and an appeal in error, by the plaintiffs to this court.
The plaintiffs set up claim to the slave under the following clause in the will of Thomas Hines, who departed this life, many years ago, in the State of South Carolina, viz: “I bequeath to my daughter Ellenore, my negro woman named Sylvia, during her life, and at her decease, to fall to and become the property of my grand daughter, Harriet.”
Ellenore Hines, to whom the life interest in the slave Sylvia, was given by the foregoing bequest, died sometime before the commencement of this suit, and the defendant is the administrator of her estate, and in that character received said slave into his possession.
The point of controversy in the case, grows out of the following state of facts: The testator1, Thomas Hines, at the time of making his will, had, in fact, *625 two grand daughters, both of whom were called and known by the same Christian name of Harriet. One, the illegitimate child of his daughter Ellenore named in the foregoing bequest; the' other a legitimate child ■of his son Ignatius. Harriet, the natural daughter of Ellenore, afterwards intermarried with Ferguson, and she and her husband are plaintiffs in this action. The legitimate grand daughter, Harriet, died some time after the death of the testator, but before the termination of the life interest in the slave Sylvia, and Ignatius Hines, the father of the last named “Harriet,” claims the remainder interest in said slave, under the foregoing be-' quest in the will of Thomas Hines, as the distributee of his deceased daughter, l
Testimony was adduced on the trial, by the plaintiffs, which tends to establish' beyond all controversy, that, “ Harriet,” the natural child of Ellenore, was the person intended by the testator as the object of his bounty.
The circuit judge instructed the jury, that it was not competent to the plaintiffs to show, by parol evidence, that the illegitimate grand daughter was the person meant by the testator; and, that in law, the legitimate grand daughter was alone entitled to take interest, in' in remainder in the slave, under the will.
The question is, did the court err in this instruction? We think not. We have bestowed upon the case a careful consideration, and are thoroughly satisfied that the law was correctly laid down by the circuit judge. It would be a useless labor to notice, in detail, the numerous cases upon this subject which we have examined. Most of the authorities will be found *626 collated or referred to, in the recent work of Jarmon on Wills, vol. 2, ch. 31. And upon a careful examination it will be found, that there is really no conflict of judicial opinion upon the question under consideration.
The stern rule of the common law is, that a bastard cannot take by inheritance, “ being looked upon as the son of nobody.” Neither can he take by deed or will, by any claim of kindred, haying no relations, and not being favored in' law; he can only take under such a description as sufficiently identifies him as the intended object of the testator’s bounty. The long established and uniform rule, therefore, is, that a gift to children, sons, daughters or issue imports prima facie legitimate children or issue, excluding those who are illegitimate. Nor will expressions, or a mode of disposition, affording mere conjecture of intention, be a ground for their admission. To entitle illegitimate children to take, the intention to include them under the description of children must appear from the will itself, either by express designation, or necessary implication collected from the instrument itself; in the construction of which, the terms children, issue, &c., are to be considered prima facie to mean legitimate children, issue, &c.
To entitle illegitimate children to take under the description of children, there must be a clear manifestation of an intention to use the word children in a sense different from its ordinary legal signification, and the same rule applies where the gift is to persons described as standing in other or different degrees of relationship to the testator.
This rule, that the intention to give to illegitimate *627 children (as distinguished from legitimate) must appear on the face of the will,' is not, however, to be ¡ understood as precluding all enquiry into the state of. the testator’s family. In some cases it cannot be known from a mere perusal of the will, whether legitimate or illegitimate children were intended; and when it is ascertained, that there were no other than illegitimate children in existence, the conclusion that they were the contemplated objects of the gift, is irresistible. As where the devise or bequest is to the children “now living” of a person who had no other than illegitimate children at the date of the will, they will be entitled to take. And upon the same principle a gift to- the “children of the late C.” a person who at the date of the will was dead, leaving illegitimate, but no legitimate children, was held good as to such illegitimate children. So a legacy to “my son John,” or to “my grand daughter Mary,” the testator having no child or grand child of the name of John or Mary, except such as . are illegitimate, has been: held good. 1 Atk., 410. . Cited in 2 Jarmon on Wills, p. 135.
But it will be, borne in mind, . that the ground of distinction in these and similar cases, is, that according to the state of facts existing, at the making of the will, legitimate children never could have claimed under the bequest or. devise, and therefore, could not have been in the testator’s . contemplation. The rule, however,, is inflexible,; that if there. are legitimate children to answer the description in the will, illegitimate children. cannot take, under- the description of children, even although there may,, exist ground for. strong conjecture, or .implication in their favor. And in . such cases,, extrinsic *628 evidence is inadmissible for the purpose of “raising a construction by circumstances.” except to establish the fact of illegitimate children, having at the date of the will acquired the reputation of being the children of the testator, or of the person named in the will.
In the case under consideration, it must be taken, that by the term grand daughter, the testator meant a legitimate grand daughter. In ascertaining the intention and meaning of the testator, it must be presumed that a term employed in the will, of definite legal import, was used and intended to be understood in its legal signification, unless from something in the context, it sufficiently appeared that a different meaning was attached to it. There is nothing on the face of this will that indicates with sufficient certainty, that by “grand daughter” he meant any thing different from what the law imports. The circumstance that the interest in remainder, in the slave, to his “ grand daughter, Harriet,” after the death of his daughter Ellenore, is coupled in the same clause of the will, with the gift of the life interest to the mother of the illegitimate grand daughter, might give rise to a plausible conjecture or inference, that the person in the contemplation of the testator to take in remainder, was the daughter of the donee of the life interest. But this, to say the most of it, is mere conjecture: and all the authorities concur that mere inference or conjecture cannot be admitted to re■pel the stern and positive implication of law against 'the claim of illegitimate persons.
The case then upon the law is clearly against the claim of the plaintiffs. The legitimate grand daughter, Harriet, fully and exactly answers the description in *629 the will; and more than this, there was no other person in existence at the date of the will, who, in view of the law, did, or conld fall within such description. This, then, is no case of latent ambiguity; and the doctrine upon that subject has no application. This is. not a case of two persons equally answering to the description in the will. Here, one of the persons clearly falls within the description; and the other as clearly does not. The term “grand daughter” in its established legal signification, applies strictly to the one; and to the other it does not apply.
Ho authority can be found to sanction the admission of extrinsic parol evidence, in such a case, that the illegitimate grand daughter was the object of the testator’s bounty; because it would be to .contradict what a positive rule of law pronounces to be the plain, settled meaning and intention of the testator from the words of the will. Eor the principle hero laid down, we refer to 2 Jarmon on Wills, 129 to 155. _ 2 Williams on Exe-ecutors, 944, 945, and cases referred to.
The judgment will be affirmed.